1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE RAYMOND LOPEZ, ) | Case No. CV 17-3110-JEM |
| Petitioner, ) | |
| ) | MEMORANDUM OPINION AND ORDER |
| v. ) | DENYING PETITION FOR WRIT OF |
| ) | HABEAS CORPUS AND DENYING |
| DANIEL PARAMO, Warden, ) | CERTIFICATE OF APPEALABILITY |
| Respondent. ) | |
| _____ ) | |

## PROCEEDINGS

On April 25, 2017, Lawrence Raymond Lopez ("Petitioner"), a prisoner in state custody, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. Section 2254.  On June 20, 2017, Warden Paramo ("Respondent") filed an Answer.  On July 19, 2017, Petitioner filed a Traverse.

Pursuant to 28 U.S.C. § 636(c), both parties have consented to proceed before this Magistrate Judge.

## PRIOR PROCEEDINGS

On June 25, 2014, a Los Angeles County Superior Court jury found Petitioner guilty of two counts of wilfully inflicting corporal injury on spouse, cohabitant, or child's parent (Cal. Penal Code § 273.5(a)) (Counts One and Three) and one count of assault with a

deadly weapon (Cal. Penal Code § 245(a)(1)) (Count Two).  (Lodgment ("LD") 1, Clerk's

Transcript ("CT") 203-05.)  The jury found that Petitioner personally used a deadly and

dangerous weapon (Cal. Penal Code § 12022(b)(1)) in the commission of Count Three, but

found the allegation that he inflicted great bodily injury (Cal. Penal Code § 12022.7(a)) in

the commission of Counts Two and Three to be not true.  (CT 204-05.)  The trial court

found that Petitioner had sustained three prior convictions constituting "strikes" under

California's Three Strikes law (Cal. Penal Code §§ 667(b)-(j), 1170.12) and three prior

serious felony convictions within the meaning of Cal. Penal Code § 667(a)(1), and that he

had served one prior prison term within the meaning of Cal. Penal Code § 667.5(b).  (CT

117, 130-33, 161, 276.)  On August 20, 2014, the trial court struck two of Petitioner's "strike"

convictions under People v. Superior Court (Romero), 13 Cal.4th 497 (1996)[1] and

sentenced him to 19 years in state prison.  (CT 275-81.)

Petitioner filed an appeal in the California Court of Appeal.  (LD 3.)  On November

30, 2015, the court of appeal affirmed the judgment in an unpublished opinion.  (LD 6.)

Petitioner filed a petition for review in the California Supreme Court.  (LD 7.)  On February

17, 2016, the California Supreme Court summarily denied review.  (LD 8.)

## SUMMARY OF EVIDENCE AT TRIAL

Based on its independent review of the record, the Court adopts the following factual

summary from the California Court of Appeal's unpublished opinion as a fair and accurate

summary of the evidence presented at trial:

> On Halloween day (October 31, 2013) [Petitioner] returned home drunk
> and argued with his girlfriend, Olivia C.  Olivia was helping her nephew (Robert)
> and sister (Readine Gallegos) carve a pumpkin.  She suggested that [Petitioner]

---

[1]  Under Cal. Penal Code § 1385, a California court may dismiss a defendant's "strike" conviction for purposes of sentencing under the Three Strikes law.  Romero, 13 Cal.4th at 529-30.

2

not trick and treat with them. Enraged, [Petitioner] slammed Olivia against the refrigerator and choked her for about 15 seconds.

Gallegos called 911 as Olivia tried to leave in her truck. [Petitioner] grabbed an eight-inch kitchen knife and said "you are not going to leave with the tires that I bought you." When Olivia tried to stop him, [Petitioner] lunged with the knife and cut her right thumb.

El Monte Police Officer David Garcia responded to the 911 call and spoke to Olivia. Olivia was crying and said that [Petitioner] shoved her against the refrigerator, causing her to hit her back and head, and choked her with both hands. When Olivia tried to leave, [Petitioner] threatened to slash her tires and lunged at her with the knife. Olivia had a lacerated right thumb, redness around the throat, and complained of head, neck, and back pain.

At trial, Olivia recanted and denied that she was choked or that [Petitioner] lunged at her with the knife. The jury, however, heard a recorded jailhouse phone call between [Petitioner] and Olivia. [Petitioner] asked if Gallegos saw the "accident." Olivia replied "What accident?" and said that Gallegos "saw you in the house when you were arguing with me . . . and you choked me."

(LD 6 at 2.)

## PETITIONER'S CONTENTIONS

1.      The trial court abused its discretion when it granted Petitioner's <u>Pitchess</u>[2] motion but failed to disclose any information to him. (Petition, Memorandum of Points and Authorities ("Pet. Mem.") at 6-7.)

2.      Petitioner's conviction on Count One should be reduced to the lesser included offense of misdemeanor battery on a spouse or cohabitant because the prosecutor

---

[2]      <u>Pitchess v. Superior Court</u>, 11 Cal.3d 531 (1974). In California, motions for discovery of police personnel files are generally referred to as <u>Pitchess</u> motions.

3

misstated the law regarding the traumatic condition element of the conviction offense.  (Id. at 7-10.)

3.    Petitioner's due process rights were violated when the trial court refused to instruct the jury regarding accident as a defense to Counts Two and Three.  (Id. at 10-13.)

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs the Court's consideration of Petitioner's cognizable federal claims.  28 U.S.C. § 2254(d), as amended by AEDPA, states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim - (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Clearly established federal law is "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision."  Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003).  "A Supreme Court decision is not clearly established law under § 2254(d)(1) unless it 'squarely addresses the issue' in the case before the state court [citation omitted] or 'establishes a legal principle that "clearly extends"' to the case before the state court."  Andrews v. Davis, 866 F.3d 994, 1018 (9th Cir. 2017) (quoting Wright v. Van Patten, 552 U.S. 120, 125-26 (2008), and Moses v. Payne, 555 F.3d 742, 754 (9th Cir. 2008)); see also Carey v. Musladin, 549 U.S. 70, 76-77 (2006).  "[I]f a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision."  White v. Woodall, 134

4

S. Ct. 1697, 1706 (2014).  "Section 2254(d)(1) . . . does not require state courts to extend [Supreme Court] precedent or license federal courts to treat the failure to do so as error."  Id.  "A principle is clearly established law governing the case 'if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no fairminded disagreement on the question.'"  Andrews, 866 F.3d at 1018 (quoting White, 134 S. Ct. at 1706-07).

A federal habeas court may grant relief under the "contrary to" clause if the state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  Williams v. Taylor, 529 U.S. 362, 405-406 (2000).  "The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle . . . but unreasonably applies it to the facts of a particular case."  Bell v. Cone, 535 U.S. 685, 694 (2002).  The "unreasonable application" clause requires that the state court decision be more than "incorrect or erroneous."  Andrews, 866 F.3d at 1018.  "The pivotal question is whether the state court's application of [the law] was unreasonable."  Harrington v. Richter, 562 U.S. 86, 101 (2011).

A state court need not cite Supreme Court precedent when resolving a habeas corpus claim.  See Early v. Packer, 537 U.S. 3, 8 (2002).  "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" the state court decision will not be "contrary to" clearly established federal law.  Id.

A state court's factual determination is not unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance."  Wood v. Allen, 558 U.S. 290, 301 (2010).  Rather, § 2254(d)(2) requires federal habeas courts to "accord the state trial court substantial deference."  Brumfield v. Cain, 135 S. Ct. 2269, 2277 (2015).  Where "'[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's . . .

5

determination.'" Wood, 558 U.S. at 301 (quoting Rice v. Collins, 546 U.S. 333, 341-42 (2006)). However, "[e]ven in the context of federal habeas, deference does not imply abandonment or abdication of judicial review," and "does not by definition preclude relief." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

In deciding a habeas petition, a federal court is not called upon to decide whether it agrees with the state court's determination. Rather, § 2254(d) "sets forth a 'highly deferential standard . . . , which demands that state-court decisions be given the benefit of the doubt.'" Andrews, 866 F.3d at 1018 (quoting Cullen v. Pinholster, 563 U.S. 170, 181 (2011)). While not a complete bar on the relitigation of claims already rejected in state court proceedings, § 2254(d) merely "'preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court precedent]' and 'goes no further.'" Id. at 1018-19 (quoting Richter, 562 U.S. at 102). "[E]ven a strong case for relief does not mean that the state court's contrary conclusion was unreasonable." Richter, 562 U.S. at 102.

The federal habeas court "looks through" a state court's silent decision to the last reasoned decision of a lower state court, and applies the AEDPA standard to that decision. See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding the judgment or rejecting the same claim rest upon the same ground.")

Petitioner presented his claims to the state courts on direct appeal. (LD 3, 7.) The California Court of Appeal denied them in a reasoned decision and the California Supreme Court summarily denied review. (LD 6, 8.) The Court looks through the California Supreme Court's silent denial to the court of appeal's reasoned decision and applies the AEDPA standard to that decision. See Ylst, 501 U.S. at 803.

///

///

6

**DISCUSSION**

**I.      Ground One Does Not Warrant Federal Habeas Relief**

In Ground One, Petitioner contends that the trial court abused its discretion when it granted his <u>Pitchess</u> motion but failed to disclose any information to him.  (Pet. Mem. at 6-7.)

**A.      Background**

Under California's <u>Pitchess</u> procedure, a criminal defendant has a limited right to discovery of law enforcement personnel records relevant to his ability to defend against a criminal charge.  <u>Pitchess</u>, 11 Cal.3d at 537–38.  The <u>Pitchess</u> procedure has been codified.  Cal. Penal Code §§ 832.7-832.8; Cal. Evid. Code §§ 1043-45.  The defendant must describe the requested records and show good cause for their discovery, setting forth their materiality to a defense to the pending charges.  <u>Garcia v. Superior Court</u>, 42 Cal.4th 63, 70-71 (2007).  If the defendant establishes good cause, the court must review the records in camera to determine what, if any, information should be disclosed.  <u>Id</u>. at 70-71; <u>see</u> Cal. Evid. Code § 1045(b).

Petitioner filed a <u>Pitchess</u> motion for discovery of matters in Officer David Garcia's personnel file "relating to conduct that amounts to moral turpitude, including but not limited to allegations of false arrest, fabrication of police reports, false testimony, perjury, false or misleading internal reports . . . . and other acts of dishonesty and fabrication."  (CT 71-72.) He contended that good cause existed because Officer Garcia had fabricated the victim's version of the events.  (<u>Id</u>. at 76-79.)  The trial court granted the motion with respect to allegations of fabrication or misstatement of statements of complaining witnesses, conducted an in camera review of Officer Garcia's personnel records, and found that there were "no discoverable or disclosable citizen complaints."  (LD 2, 2 Reporter's Transcript ("RT") B4-B5, B9.)

On appeal, Petitioner requested the California Court of Appeal to review the personnel records examined by the trial court and determine whether the trial court had abused its discretion by failing to disclose them to Petitioner. (LD 3 at 7-8.) Respondent did not object. (LD 4 at 7-8.) The court of appeal reviewed the sealed records and found that "the trial court did not abuse its discretion in denying discovery." (LD 6 at 2.)

**B.    Analysis**

A federal court conducting habeas review is limited to deciding whether a state court decision violates the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). "[F]ederal habeas corpus relief does not lie for errors of state law." Lewis v. Jeffers, 497 U.S. 764, 780 (1990). Petitioner's contention that the trial court abused its discretion under the Pitchess procedure does not set forth a cognizable ground for habeas corpus relief. See Williams v. Borg, 139 F.3d 737, 740 (9th Cir. 1998) (federal habeas relief is available "only for constitutional violation, not for abuse of discretion.").

Nevertheless, although a Pitchess motion is a creature of state law, it may implicate the due process right to receive exculpatory and impeachment evidence. Harrison v. Lockyer, 316 F.3d 1063, 1065-66 (9th Cir. 2003); see Brady v. Maryland, 373 U.S. 83, 87-88 (1963) (criminal defendants have due process right to obtain from government favorable evidence material to guilt or punishment). Petitioner's Pitchess claim is cognizable on federal habeas review if construed as asserting a due process violation under Brady. See, e.g., Lopez-Martinez v. Dovey, No. CV 06-1987-CJC (MAN), 2009 WL 863576, at *15 (C.D. Cal. Mar. 26, 2009) ("If there was no Brady violation, Petitioner has no federally cognizable claim, regardless of whether the state court's handling of his Pitchess motion was erroneous under state law."). Three elements must be proved to establish a Brady violation: (1) the evidence at issue was favorable to the defendant, either as exculpatory evidence or impeachment material; (2) the evidence was suppressed by the state, willfully or

8

inadvertently; and (3) prejudice resulted from the failure to disclose the evidence. <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82 (1999). Evidence is material under <u>Brady</u> "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." <u>Kyles v. Whitley</u>, 514 U.S. 419, 433-34 (1995) (internal quotation marks and citation omitted).

The trial court and the appellate court each conducted an in camera review of Officer Garcia's personnel records and found that they did not contain any materials disclosable under <u>Pitchess</u>. Petitioner has not shown any basis upon which to conclude that these factual determinations were unreasonable. <u>See</u> 28 U.S.C. 2254(d)(2); <u>Taylor v. Maddox</u>, 366 F.3d 992, 999-1000 (9th Cir. 2004); <u>see also</u> 28 U.S.C. § 2254(e)(1) ("a determination of a factual issue made by a State court shall be presumed to be correct"). He points to no evidence indicating that Officer Garcia's personnel records contained information discoverable under <u>Pitchess</u>, much less material under <u>Brady</u>.[3] <u>See</u> <u>People v. Superior Court (Johnson)</u>, 61 Cal.4th 696, 711-12 (2015) ("<u>Brady</u>'s constitutional materiality standard is narrower than the <u>Pitchess</u> requirements," because under <u>Pitchess</u>, information need only be material to subject matter of pending charges, whereas under <u>Brady</u>, it must be reasonably probable that disclosure of information would have altered outcome of trial).

The complete absence of evidence that any exculpatory or impeaching materials existed and were withheld from Petitioner is fatal to his due process claim. <u>See, e.g.</u>, <u>Strickler</u>, 527 U.S. at 286 ("Mere speculation that some exculpatory material may have been withheld is unlikely to establish good cause for a discovery request on collateral review."); <u>Harrison</u>, 316 F.3d at 1066 (affirming denial of <u>Brady</u> claim when petitioner "made no

---

[3]     Petitioner argues that this Court should review the sealed records. (Pet. Mem. at 6; Traverse at 7.) The Court is not required to review the personnel records (which have not been provided to the Court) when Petitioner offers nothing but speculation that they contained evidence favorable to his defense. <u>See</u> <u>Maine v. Sherman</u>, No. 1:17-cv-013-7-AWI-JLT (HC), 2018 WL 646127, at *23 (E.D. Cal. Jan. 31, 2018) (denying petitioner's claim requesting federal habeas court to conduct in camera review of personnel records when trial court and state appellate court had reviewed records and found no disclosable <u>Pitchess</u> material); <u>see also</u> <u>Pennsylvania v. Ritchie</u>, 480 U.S. 39, 58 n.15 (1987) (defendant may not require court to search through sensitive file "without first establishing a basis for his claim that it contains material evidence").

showing that [officer]'s file contained complaints material to his defense"); Hughes v. Runnels, No. C 07-1143 WHA (PR), 2011 WL 672650, at *8 (9th Cir. Feb. 16, 2011) (when "the trial court twice found cause to review the records sought, reviewed them, and concluded that nothing in such records was relevant to petitioner's case," and petitioner offered only conclusory allegations in rebuttal, petitioner did not establish Brady violation).

Accordingly, the state court's rejection of this claim was not contrary to, or an unreasonable application of, clearly established federal law as set forth by the United States Supreme Court, and did not rest on an unreasonable determination of the facts.  28 U.S.C. § 2254(d).  Ground One does not warrant federal habeas relief

## II.  Ground Two Does Not Warrant Federal Habeas Relief

In Ground Two, Petitioner contends that his conviction on Count One should be reduced from the conviction offense of wilful infliction of corporal injury on a spouse or cohabitant to the lesser included offense of misdemeanor battery on a spouse or cohabitant, because the prosecutor misstated the law regarding the traumatic condition element of the conviction offense.[4]  (Pet. Mem. at 7-10.)

### A.  Applicable Federal Law

"[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."  Smith v. Phillips, 455 U.S. 209, 219 (1982).  Thus, a habeas petition will be granted for prosecutorial misconduct only when the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)); see also Parker v. Matthews, 567 U.S. 37, 45 (2012) (Darden standard constitutes relevant "clearly established federal law" for AEDPA review of prosecutorial misconduct claims).  "Th[is] standard allows a

---

[4]    Wilful infliction of corporal injury on a spouse or cohabitant (Cal. Penal Code § 273.5) requires the victim to have suffered an injury resulting in a traumatic condition, while its lesser included offense of simple battery against a spouse or cohabitant (Cal. Penal Code § 243(e)(1)) does not require an injury.  (See CT 169-70, 174.)

federal court to grant relief when the state-court trial was fundamentally unfair but avoids interfering in state-court proceedings when errors fall short of constitutional magnitude." Drayden v. White, 232 F.3d 704, 713 (9th Cir. 2000).

## B.    Background

In his opening statement, the prosecutor told the jury that there were two domestic violence charges against Petitioner: the "initial choking incident" (Count One) and "the knife incident" (Count Three).  (2 RT 1212.)  At trial, the victim denied that Petitioner had pushed or choked her, and testified that he only nudged her to the side and squeezed her shoulders, not her throat.  (2 RT 1225-26, 1237-38, 1268-71.)  Officer Garcia, however, testified that the victim told him that Petitioner had pushed her against the refrigerator, causing her to hit her back and head, and then placed his hands around her throat and applied pressure f or about 15 seconds.  (3 RT 1531-32.)  The victim told Garcia that she felt pain in her back, neck, and the back of her head, and he observed redness around her throat.  (3 RT 1531, 1538.)  The victim's sister testified that after the police left, the victim said that her back and neck were hurting and took pain medication.  (2 RT 1298-99.)  The next day she complained of a very bad headache.  (2 RT 1299.)

After the close of the prosecution's case, Petitioner moved for a judgment of acquittal as to Count One based on insufficient evidence of traumatic injury.  (3 RT 1573-74.)  The trial court noted that Officer Garcia had testified "to the redness around the neck and the complaint of pain and discomfort to the back and head," and denied the m otion.  (3 Rt 1574.)

The jury was instructed regarding the crime of wilful infliction of corporal injury on a spouse or cohabitant with CALCRIM No. 840.  In pertinent part, the instruction prov ided:

To prove that the defendant is guilty of this crime, the People must prove that:

1. The defendant willfully and unlawfully inflicted a physical injury on his

   spouse or cohabitant;

AND

2. The injury inflicted by the defendant resulted in a traumatic condition.

1      Someone commits an act willfully when he or she does it willingly or on

2  purpose.

3      A traumatic condition is a wound or other bodily injury, whether minor or

4  serious, caused by the direct application of physical force.

5  . . . .

6  A traumatic condition is the result of an injury if:

7      1.The traumatic condition was the natural and probable

8      consequence of the injury;

9      2. The injury was a direct and substantial factor in causing the

10      condition;

11      AND

12      3. The condition would not have happened without the injury.

13  (CT 169.)

14      The jury was also instructed with CALCRIM No. 3500 regarding unanimity:

15  The People have presented evidence of more than one act to prove that the

16      defendant committed this offense [Count One].  You must not find the defendant

17      guilty unless you all agree that the People have proved that the defendant

18      committed at least one of these acts and you all agree on which act he committed.

19  (CT 171.)

20      In his closing argument, the prosecutor said that the jury could find Petitioner guilty of

21  Count One based on either testimony that he choked the victim and caused redness around

22  her neck, or "testimony about [the victim] getting pushed up against the refrigerator" coupled

23  with testimony that she complained of "pain in the back of head, neck area, and her back."

24  (3 RT 1604-05).  He told the jury that it could choose whether to base a guilty verdict on the

25  choking or the pushing, but the choice of act would have to be unanimous.  (3 RT 1605.)

26  Later, in discussing the traumatic condition element of the crime, the prosecutor said:

27

28

1    I have talked a little about that, about her neck as well as the – as to Count 1.

2    Also the pain that she felt in her neck and back as well.

3    (3 RT 1606.)

4    He recited the definition of traumatic condition in the jury instruction and argued:

5    And under all scenarios here, whether you go to the slam against the refrigerator,

6    caused by the defendant, pushing her up against that; whether the choking itself,

7    it was the defendant's hands that were choking . . . . It was the defendant's hand

8    that caused that traumatic injury.

9    (3 RT 1607.)

10   In her closing argument regarding Count One, trial counsel argued that the evidence

11   did not show "traumatic injury" and urged the jury to convict Petitioner of no more than

12   misdemeanor battery on a spouse or cohabitant. (3 RT 1619-20.) On rebuttal, the

13   prosecutor stressed that the definition of traumatic condition did not require serious injury:

14   Minor or serious, it doesn't require. It needs to be some sort of injury. The pain

15   in her neck, the pain in her back, the redness on her neck: you take your choice

16   of which incident. But he's guilty of that crime.

17   (3 RT 1626.)

18   During deliberations, the jury submitted a question about the definition of injury:

19   Does short term pain, whether major or minor, to the back and/or the head as a

20   result of the circumstances, constitute an injury? Is there a legal definition of an

21   injury?

22   (CT 202.)

23   The trial court told the jury that "[we] do not give you what a legal definition of an injury

24   is," and that the answers to its questions were contained in the jury instructions for the charged

25   offense and lesser included offense. (3 RT 1815.)

26

27

28

The jury also asked for and received a readback of Officer Garcia's and the victim's sister's testimony regarding the victim's complaints of pain in the head and back. (CT 201; 3 RT 1814-16.)

## C.    California Court of Appeal's Decision

The Court of Appeal first found that Petitioner had forfeited his prosecutorial misconduct claim because he did not object to the prosecutor's argument. (LD 6 at 4.) It then addressed the merits:

On the merits, we conclude there was no misstatement of the law and that [Petitioner]'s reliance on *People v. Abrego* (1993) 21 Cal. App. 4th 133 is misplaced. In *Abrego*, the victim was slapped in the head five times but not injured and did not complain of pain or tenderness. The investigating officer observed no injury and the victim testified that she was not bruised or injured. (*Id.*, at pp. 135–136.) The Court of Appeal concluded that pain, absent an injury, does not establish a traumatic condition. (*Id.*, at pp. 137-138.)

In many domestic violence cases, the traumatic condition is established by the victim's bruises . . . or redness . . . . Section 273.5, subdivision (d) provides that a traumatic condition "means a condition of the body, such as a *wound*, or external or *internal injury* including, but not limited to, injury as a result of strangulation or suffocation, whether of a minor or serious nature, caused by physical force...." (Italics added.) Pushing and choking a victim can result in an internal injury, resulting traumatic condition manifested by a concussion, head, neck or back pain, or a sore throat.

*Abrego* is a sufficiency of the evidence case and factually distinguishable. Unlike *Abrego*, Olivia told the investigating officer that she was injured when [Petitioner] slammed her against the refrigerator and choked her. The prosecutor did not misstate the law in arguing that the jury could infer a traumatic condition based on evidence that Olivia experienced pain to her neck and back, or in the

alternative, redness to the neck. "When attacking the prosecutor's remarks to the jury, the defendant must show that, '[i]n the context of the whole argument and the instructions' [citation], there was 'a reasonable likelihood the jury understood or applied the complained-of-comments in an improper or erroneous manner." [Citation omitted]

[Petitioner] makes no showing that the prosecutor's comments denied him a fair trial or that it is reasonably probable that [Petitioner] would have received a more favorable result absent the alleged misconduct. [Citation omitted] The jury was instructed on corporal injury resulting in traumatic condition (CALCRIM 840) and battery (CALCRIM 841), and that battery "does not have to cause pain or injury of any kind." The trial court instructed that "if you believe that the attorneys' comments on the law conflict with my instructions, you must follow my instructions." (CALCRIM 200.) It is presumed that the jury understood and followed the instructions. [Citations omitted]

(LD 6 at 4-5.)

**D.    Analysis[5]**

Petitioner contends that the prosecutor misstated the law regarding traumatic condition and, as a result, the jury likely convicted him on Count One based on the legally deficient theory that pain alone can constitute a traumatic condition. (Pet. Mem. at 7-9.) He argues that the redness observed by Officer Garcia around the victim's throat could only have come from choking her, not from pushing her against the refrigerator, and reasons that

---

[5]    Respondent contends that this claim is barred by the doctrine of procedural default because the court of appeal found that Petitioner had forfeited it through failure to object. (Answer Mem. at 9-12.) Federal courts may address allegedly defaulted habeas claims on the merits if the lack of merit is clear but the procedural default issues are not. Lambrix v. Singletary, 520 U.S. 518, 523-25 (1997); Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002). In the interest of judicial economy, the Court will address the merits of this claim without addressing the procedural default issue. Because the court of appeal simultaneously addressed the claim on the merits, AEDPA deference applies. See Clabourne v. Ryan, 745 F.3d 362, 383 (9th Cir. 2014), overruled on other grounds by McKinney v. Ryan, 813 F.3d 798 (9th Cir. 2015) (en banc);

if the jury based its verdict on the act of pushing rather than choking, it must have found a traumatic condition based solely on testimony about the victim's pain.  (Id. at 8.)

"[U]nder Darden, the first issue is whether the prosecutor's remarks were improper and, if so, whether they infected the trial with unfairness."  Tan v. Runnels, 413 F.3d 1101, 1112 (9th Cir. 2005).  The Court defers to the Court of Appeal's determination that the prosecutor's argument regarding traumatic condition did not misstate California law.  See Bradshaw v. Richey, 546 U.S. 74, 76 (2005) (per curiam) ("state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus"); Hicks v. Feiock, 485 U.S. 624, 629-30 & n.3 (1988) (federal habeas court is not at liberty to disregard California Court of Appeal's rulings on state law when California Supreme Court has denied review).  The statute expressly provides that the injury sustained by the victim may be "minor" and that an "internal injury" qualifies as a traumatic condition.  Cal. Penal Code § 273.5(d).  The court of appeal reasonably found that although pain itself does not constitute a traumatic condition, see Abrego, 21 Cal. App. 4th at 137-38, the jury could infer from the victim's pain that as a result of being slammed against the refrigerator, she suffered an internal injury that manifested itself as pain to her back, neck, and the back of her head.  (2 RT 1298-99; 3 RT 1531, 1538.)

Even assuming that the prosecutor's comments misstated the law, they did not deprive Petitioner of a fair trial.  Darden, 477 U.S. at 181.  The jury was correctly instructed regarding the traumatic condition element of the crime, and arguments of counsel generally carry less weight with a jury than do instructions from the court.  Boyde v. California, 494 U.S. 370, 384-85 (1990).  And the victim suffered redness to her throat, which by itself constituted a traumatic condition.  See People v. Wilkins, 14 Cal. App. 4th 761, 777 (1993).

Petitioner does not contest that the redness constituted a traumatic condition, but argues that the jury's questions and readback request show that it was focusing on the victim's pain caused by the pushing, not the redness to her throat caused by the choking .  (Pet. Mem. at 8-9.)  But as long as the jury reached unanimous agreement, its guilty verdict

could have rested on findings that Petitioner both pushed and choked the victim. (3 RT 1810-11 ("You can agree that one act took place, but not the other. You can agree that both acts took place, or neither act took place.").) The fact that the jury sought clarification regarding the traumatic condition requirement with respect to the pushing does not necessarily mean that it rejected the choking as a basis for its verdict. Indeed, evidence that Petitioner choked the victim was particularly strong. She told Officer Garcia that Petitioner placed his hands around her throat, applied pressure for about 15 seconds and did not release his grip until her sister threatened to call the police. (3 RT 1531-32.) Her sister testified that Petitioner grabbed the victim's throat with one hand and pinned her against the wall. (2 RT 1281-82.) The victim told Petitioner during a recorded telephone call that her sister had seen him choking her. (1 CT 155.)

This is not a case like Deck v. Jenkins, 814 F.3d 954 (9th Cir. 2014) (en banc), where the Ninth Circuit held that the state court's finding that the prosecutor's misleading argument did not violate due process constituted an unreasonable application of Darden. Id. at 980-85. In Deck, which involved a conviction for attempted lewd act on a child arising from a sting operation, the state court found that the prosecutor had misstated California law by telling the jury that Deck did not have to intend to commit a lewd act on the fictitious minor at their first meeting as long as he intended to commit it at a future date. Id. at 973, 974-75. The jury would not have been able to figure out from the jury instructions that the prosecutor's interpretation of the law was incorrect. Id. at 983. The evidence regarding the temporal aspect of Deck's intent was "not overwhelming," and the misstatement went to the heart of Deck's defense that his conduct did not constitute attempt because he did not intend to commit a lewd act on the night of the meeting. Id. at 980.

But whereas in Deck the state court found that the prosecutor had misstated California law, here the court of appeal found that the prosecutor did not misstate California law regarding traumatic condition. And while the jury's questions and readback request indicate that it was considering whether to find a traumatic condition based on the victim's

pain (CT 201-02; 3 RT 1813-15), there was strong evidence of Petitioner's guilt under a separate factual scenario – that he choked the victim – unaffected by the alleged misstatements. Viewed "in the context of the facts and circumstances of this case," the prosecutor's argument did not render Petitioner's trial unfair. <u>Darden</u>, 477 U.S. at 183 n.15. The court of appeal did not unreasonably apply <u>Darden</u> when it rejected Petitioner's claim. <u>See</u> <u>Parker</u>, 567 U.S. at 47-48.

Accordingly, the state court's rejection of Petitioner's prosecutorial misconduct claim was not contrary to, or an unreasonable application of, clearly established federal law as set forth by the United States Supreme Court. 28 U.S.C. § 2254(d)(1). Ground Two does not warrant federal habeas relief.

**III.** **Ground Three Does Not Warrant Federal Habeas Relief**

In Ground Three, Petitioner contends that his due process rights were violated when the trial court refused to instruct the jury on accident as a defense to Counts Two and Three. (Pet. Mem. at 10-13.)

**A.** **Background**

In California, a person is not criminally liable if he or she committed the charged act "through misfortune or by accident, when it appears that there was no evil design, intention or culpable negligence." Cal. Penal Code § 26(5). During an initial discussion of jury instructions, trial counsel requested the trial court to instruct the jury with CALCRIM No. 3404 on accident.[6] (2 RT 1301.) The trial court tentatively indicated that the instruction was not applicable, but reserved ruling on the request. (2 RT 1303-08.) Later, the trial court ruled that it would not give the instruction because it was inapplicable. (3 RT 1562-64.) It

---

[6] CALCRIM No. 3404 provides, in pertinent part:

*<Give this paragraph when instructing on general or specific intent crimes>*

[The defendant is not guilty of *<insert crime[s]>* if (he/she) acted [or failed to act] without the intent required for that crime, but acted instead accidentally. You may not find the defendant guilty of *<insert crime[s]>* unless you are convinced beyond a reasonable doubt that (he/she) acted with the required intent.]

explained that even if Petitioner did not intend to stab the victim but only to slash her tires, the injury to her thumb was a natural and probable consequence of his actions because it was foreseeable that she would try to protect the tires.  (3 RT 1563-64.)  The trial court stated that trial counsel could still argue that it was the victim's "intervention that put her in harm's way."  (3 RT 1564.)

## B.    California Court of Appeal's Decision

The court of appeal held that the trial court was not required to instruct the jury with CALCRIM No. 3404:

> The defense of accident or misfortune "amounts to a claim that the defendant acted without forming the mental state necessary to make his or her actions a crime. [Citations]" (*People v. Lara* (1996) 44 Cal. App. 4th 102, 110.) A trial court is not required to give a pinpoint instruction that is argumentative or not supported by substantial evidence. (*People v. Bolden* (2002) 29 Cal.4th 515, 558.) Here the court concluded there was no substantial evidence to give CALCRIM 3404 because the People's case was based on two possible scenarios: that [Petitioner] purposefully stabbed Olivia or that [Petitioner] tried to puncture the tire and cut Olivia.  Under either scenario, [Petitioner] did not accidentally wield the knife. Because assault with a deadly weapon is a general intent crime, [Petitioner] did not have to intend to cut or injure Olivia.  (See *People v. Colantuono* (1994) 7 Cal.4th 206, 214-215.)

> The defense of accident is available only when the alleged crime was the result of an event that happened while the defendant engaged in a lawful act. (*People v. Gorgol* (1953) 122 Cal. App. 2d 281, 308.) [Petitioner] brandished the knife and threatened to puncture the tire.  It was a criminal act and precludes an instruction on accident or misfortune.

> In order to convict on assault, the prosecution had to prove that [Petitioner] "willfully committed an act that by its nature will probably and directly result in

injury to another . . . ." (*People v. Colantuono, supra*, 7 Cal.4th at p. 214.)
[Petitioner] grabbed the knife and lunged in a manner that was highly likely to
injure Olivia. Even without an accident instruction, [Petitioner] was free to argue
that the stabbing was accidental.[7] *(See e.g., People v. Corning* (1983) 146 Cal.
App. 3d 83, 88-89 [failure to instruct on accident harmless; defense counsel
argued that shooting was accidental].) In finding that the assault was willful, the
jury necessarily rejected the claim that the stabbing was accidental. . . . In view
of the overwhelming evidence of guilt, the alleged error in not instructing on
accident or misfortune was harmless under any standard of review. (*Chapman
v. California* (1967) 386 U.S. 18, 22-24 [harmless beyond reasonable doubt
standard]; *People v. Watson* (1956) 46 Cal.2d 818, 836 [reasonable probability of
a more favorable result standard].)

(LD 6 at 7-9).

### C.    Applicable Federal Law

As a general rule, a claim of instructional error does not raise a cognizable federal
claim unless the error "so infected the entire trial that the resulting conviction violates due
process." Estelle, 502 U.S. at 72 (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)). In
determining whether a constitutional violation has occurred, the instructional error must be
viewed in light of the instructions as a whole, as well as the trial record. See Estelle, 502
U.S. at 72; Cupp, 414 U.S. at 147. This is true even when the instructional error involves
failure to give an instruction. See Henderson v. Kibbe, 431 U.S. 145, 156 (1977) ("The
significance of the omission of . . . an instruction may be evaluated by comparison with the
instructions that were given."). Failure to give an instruction is less prejudicial than an

---

[7]        In opening statement, defense counsel argued that it was an "accident." At trial,
Olivia testified "It was an accident. It was my fault." In a jailhouse phone call, appellant
told Olivia it was an "accident" and "as long as you don't go to court[,] I should beat the
case."

erroneous instruction.  Id. at 155 ("An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law.")

It is equally established that "the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'"  Holmes v. South Carolina, 547 U.S. 319, 324 (2006) (citation omitted).  The Supreme Court has held that "[a]s a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor."  Matthews v. United States, 485 U.S. 58, 63 (1988).  Ninth Circuit cases have treated the standard set forth in Mathews as clearly established Supreme Court precedent for purposes of AEPDA.[8]  See Bradley v. Duncan, 315 F.3d 1091, 1098-99 (9th Cir. 2002); Conde v. Henry, 198 F.3d 734, 739 (9th Cir. 1999).  The Ninth Circuit has declared that "the right to present a defense would be empty if it did not entail the further right to an instruction that allowed the jury to consider the defense."  Bradley, 315 F.3d at 1099 (internal quotation marks and citation omitted).  However, failure to instruct on a defense theory implicates due process only "if the theory is legally sound and evidence in the case makes it applicable."  Clark v. Brown, 450 F.3d 898, 904-05 (9th Cir. 2006) (citation and quotation marks omitted); see Kamyab v. Uribe, 504 F. App'x 585, 585 (9th Cir. 2013) ("A criminal defendant is entitled to an instruction on an affirmative defense, but only if he presents sufficient evidence to support that defense.").

Instructional errors are generally subject to harmless error analysis.  Hedgpeth v. Pulido, 555 U.S. 57, 60-61 (2008); Neder v. United States, 527 U.S. 1, 10-11 (1999).  A

---

[8]   This authority is not without doubt.  Mathews was not decided on constitutional grounds.  See Larsen v. Paramo, 700 F. App'x 594, 596 (9th Cir.) (Mathews "stated a 'general proposition' of federal criminal procedure; it did not recognize a constitutional right to a jury instruction"), cert. denied, 138 S. Ct. 483 (2017); Bueno v. Hallahan, 988 F.2d 86, 88 (9th Cir. 1993) (per curiam) (acknowledging that Mathews is "not compelled by the Constitution").  And in Gilmore v. Taylor, 508 U.S. 333 (1993), the Supreme Court noted that its cases involving the right to present a defense involved exclusion of evidence or testimony of defense witnesses, not restrictions on a defendant's ability to present an affirmative defense.  Id. at 343.  Addressing an argument that "the right to present a defense includes the right to have the jury consider it, and that confusing instructions on state law which prevent a jury from considering an affirmative defense therefore violate due process," the Supreme Court declared, without mentioning Mathews, that such an expansive reading of its cases "would make a nullity" of the Estelle rule that instructional errors of state law generally may not form a basis for federal habeas relief.  Id. at 343-44.

habeas petitioner is not entitled to relief unless the constitutional error had a substantial and injurious effect or influence in determining the jury's verdict.  Brecht v. Abrahamson, 507 U.S. 619, 638 (1993).  A "substantial and injurious effect" in this context means a "reasonable probability" that the jury would have arrived at a different verdict had the instruction been given.  Byrd v. Lewis, 566 F.3d 855, 860 (9th Cir. 2009).

### D.  Analysis

Petitioner's claim fails for several reasons.  First, AEDPA precludes relief because "[n]o clearly established federal law, as determined by the Supreme Court, holds that a state court's failure to give a pinpoint jury instruction on the defense theory of the case violates a criminal defendant's due process right to be afforded a meaningful opportunity to present a complete defense."  Larsen, 700 F. App'x at 596.

Second, assuming the existence of clearly established law, the trial court's refusal to instruct the jury with CALCRIM No. 3404 did not violate due process.  As the court of appeal explained, the evidence at trial did not warrant giving the instruction under applicable California law.  See Clark, 450 F.3d at 904-05 (absence of instruction on defense theory does not violate due process unless theory is legally sound and factually supported).  Petitioner's theory was that he accidentally stabbed the victim's thumb while trying to slash the tires on her car.  (Pet. Mem. at 12.)  The victim testified that the stabbing was "an accident" and "my fault" because she stuck her hand out to stop him from cutting the tire.  (2 RT 1227-29, 1246, 1251.)  But even under Petitioner's theory, it was only the injury to the victim that was accidental, not his act of stabbing while in close proximity to her.  See Colantuono, 7 Cal.4th at 214-15 (assault with deadly weapon is general intent crime; defendant must intentionally engage in conduct likely to result in injury but need not specifically intend to inflict injury); People v. Thurston, 71 Cal. App. 4th 1050, 1054-55 (1999) (wilful infliction of corporal injury on spouse or cohabitant is general intent crime, requiring only intent to do the assaultive act).

Moreover, under California law, an accident instruction is warranted only if the accident occurred in the course of otherwise lawful conduct. Gorgol, 122 Cal. App. 3d at 308. The victim testified that Petitioner stabbed her thumb while attempting to slash the tires on her car. (2 RT 1227-29.) Even if he paid for the tires,[9] slashing them was not a lawful act. Cf. People v. Wallace, 123 Cal. App. 4th 144, 147-51 (2005) (spouse can be criminally liable for vandalizing community property).

Moreover, the jury was instructed that both offenses charged as a result of the stabbing – inflicting injury on a spouse or cohabitant and assault with a deadly weapon – required the prosecution to prove that Petitioner acted wilfully, defined as "willingly or on purpose." (CT 169-70 (CALCRIM No. 840), 172-73 (CALCRIM No. 875).) The instruction on assault with a deadly weapon also required the prosecution to prove that Petitioner "was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone." (CT 172.) These instructions did not permit the jury to convict Petitioner if it found that his actions were accidental. See Henderson, 431 U.S. at 156 (significance of omission of instruction should be evaluated by comparison with instructions given). The jury is presumed to follow its instructions. See Weeks v. Angelone, 528 U.S. 225, 234 (2000); Richardson v. Marsh, 481 U.S. 200, 211 (1987).

Under the instructions given, Petitioner was free to argue that the prosecution had not proved intent because the stabbing was accidental. In fact, trial counsel told the jury in her opening statement that the evidence would show that the injury to the victim's thumb "was an accident." (2 RT 1214.) Although trial counsel did not use the word "accident" in her closing statement, she argued that Petitioner did not have the required mental state for Counts Two and Three because he only intended to "pop the tires" and the injury occurred because the

---

[9] The victim testified:
Um, when I told him we were going to [b]e leaving, he got upset and said that, you know, not in that truck with the tires that I just bought for you. I was like, that I bought for that truck rather.
(2 RT 1226.)

victim got in the way.  (3 RT 1620-23.)  She argued that Petitioner could not have foreseen that the victim would follow him outside and try to grab the knife when he was already making a stabbing movement.  (3 RT 1622.)  The omission of an accident instruction did not deprive Petitioner of the ability to present an accident defense and did not render his trial fundamentally unfair.  See Estelle, 502 U.S. at 72.

Even assuming a due process violation, the court of appeal reasonably found it was harmless.  See Davis v. Ayala, 135 S. Ct. 2187, 2199 (2015) ("Brecht test subsumes the limitations imposed by AEDPA").  There was strong evidence that the injury to the victim's thumb was not accidental.  Although she recanted her statements at trial, the victim told Officer Garcia that while she was trying to dissuade Petitioner from slashing her tires, he lunged at her and cut her thumb.  (3 RT 1535-36.)  Garcia asked her whether Petitioner lunged at her or at the tire, and she said he lunged at her.  (3 RT 1537.)  She also told her sister that she believed that Petitioner lunged at her rather than the tire.  (2 RT 1288.)  And because the jury instructions required the prosecution to prove intent to commit the assaultive act (CT 169, 172), the jury's guilty verdicts show that it rejected the argument that the stabbing was accidental.  See Jackson v. Gastelo, No. CV 16-7063-AB(E), 2017 WL 3835803, at *9 (C.D. Cal. May, 5, 2017) ("By convicting Petitioner of assault with a firearm, the jury necessarily found that Petitioner did not shoot his wife by accident."), accepted by, 2017 WL 3834718 (C.D. Cal. Aug. 30, 2017); Tamagni v. McGrath, No. CIV S022132FCDKJMP, 2005 WL 1387936, at *7 (E.D. Cal. June 9, 2005) (jury necessarily rejected victim's testimony that "the knee-forehead contact was accidental" when it convicted petitioner of section 273.5 violation), accepted by 2005 WL 1896360 (E.D. Cal. Aug. 5, 2005).  The omission of the accident instruction did not have any "substantial and injurious effect or influence in determining the jury's verdict."  Brecht, 507 U.S. at 638.

Accordingly, the state court's rejection of Petitioner's instructional error claim was not contrary to, or an unreasonable application of, clearly established federal law as set forth by

the United States Supreme Court.  28 U.S.C. § 2254(d)(1).  Ground Three does not warrant federal habeas relief.

**IV.    Petitioner Is Not Entitled to An Evidentiary Hearing**

Petitioner seeks an evidentiary hearing.  (Pet. Mem. at 2-3; Traverse at 2.)  The United States Supreme Court has held that federal habeas review under 28 U.S.C. § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits."  Pinholster, 563 U.S. at 181.  "[A]n evidentiary hearing is pointless once the district court has determined that § 2254(d) precludes habeas relief."  Sully v. Ayers, 725 F.3d 1057, 1075 (9th Cir. 2013).  Moreover, an evidentiary hearing is not warranted when "the record refutes the applicant's factual allegations or otherwise precludes habeas relief."  Schriro v. Landrigan, 550 U.S. 465, 474 (2007).  Petitioner's request for an evidentiary hearing is denied.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2254 cases, the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  For the reasons stated above, the Court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right, as is required to support the issuance of a certificate of appealability.  See 28 U.S.C. § 2253(c)(2).

## ORDER

IT IS ORDERED: (1) that the Petition is denied; (2) a certificate of appealability is denied; and (3) Judgment shall be entered dismissing this action with prejudice.

DATED: March 19, 2018

_/s/ John E. McDermott_
JOHN E. McDERMOTT
UNITED STATES MAGISTRATE JUDGE